Obed A. KALWITZ, Jr., and Rolene Kalwitz, Appellants–Plaintiffs,

v.

Eugene D. KALWITZ and Sharon K. Grieger, Appellees–Defendants.

No. 46A03–0912–CV–574.

Court of Appeals of Indiana.

Sept. 20, 2010.

---

See also 717 N.E.2d 904, 759 N.E.2d 228, 822 N.E.2d 274, and 923 N.E.2d 982.

David K. Payne, Braje, Nelson & Janes, LLP, Michigan City, IN, Attorney for Appellants.

Stephen A. Kray, LaPorte, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Obed A. Kalwitz Jr. and his wife Rolene Kalwitz appeal the small claims court's order in favor of Obed Jr.'s siblings Eugene D. Kalwitz and Sharon K. Grieger. Specifically, Obed Jr. and Rolene contend that the small claims court erred by denying their request for a change of judge, determining that their claim is barred by res judicata, and assessing compensatory and punitive damages as well as attorney's fees against them. We conclude that there is no error. We also conclude that Eugene and Sharon are entitled to appellate attorney's fees and costs for Obed Jr. and Rolene's bad faith in bringing this appeal. We therefore affirm and remand to the small claims court for a determination of the amount of appellate attorney's fees and costs to which Eugene and Sharon are entitled.

### Facts and Procedural History

This case is the fifth appeal in this contentious family dispute. Obed A. Kalwitz Sr. and Helen Kalwitz married in 1940 and had four children: Obed Jr., Eugene, Sharon, and Ted. Ted died in 1979. In the early 1980s, Obed Jr. asked his parents and Eugene to co-sign on a loan so that he

could purchase his own farmland. When Obed Jr. and his wife Rolene failed to pay the promissory note, the lender filed a mortgage foreclosure action in 1985. While the action was pending, Obed Jr. and Rolene persuaded Obed Sr. and Helen to transfer 331 acres to Obed Jr. and Rolene's two children for a mere purchase price of forty dollars to protect the property from a possible deficiency judgment in the foreclosure action. The property was to be transferred back to Obed Sr. and Helen at the close of the litigation. Obed Sr. died in 1989 and Helen died in 1995. On the day of Helen's funeral, Obed Jr. placed a locked gate at the entrance to the 331 acres, barring Eugene from returning to his residence there. Also on that day, Sharon learned that Obed Jr. had no intention of returning title to the 331 acres. The mortgage foreclosure action was resolved later in 1995 by mutual dismissal of all pending claims. The recorded mortgage lien held by the lender on the 331 acres was removed.

Eugene and Sharon served as the personal representatives of the estates of their parents. Helen's estate in 1995 and Obed Sr.'s estate in 1996 filed a complaint against Obed Jr., Rolene, and their two children seeking an order declaring a constructive trust on the 331 acres and quieting title to the property in the estates or their beneficiaries. In the third published appeal to this Court, we determined that (1) Obed Jr. had a confidential or fiduciary relationship with his parents and exercised dominance over them and (2) Obed Jr. and Rolene acted in concert to induce and persuade Obed Sr. and Helen to convey land to their two children. *Kalwitz v. Estate of Kalwitz*, 822 N.E.2d 274 (Ind.Ct.App. 2005), *trans. denied.*[1] We thus affirmed

the trial court's judgment imposing a constructive trust on the 331 acres in favor of the estates. *Id.*

This brings us to the current dispute. In February 2006, Judge Steven E. King ordered Obed Jr., Rolene, Eugene, and Sharon into mediation to conclude all pending matters in the estates. The resulting Mediation Settlement Agreement, filed in October 2006, required the distribution of certain personal property to Obed Jr. provided he removed it from the estates within a limited time period:

> Obed shall remove as his sole and exclusive property all portable farm machinery and equipment which are located upon the real estate of the Estate, including, but not limited to, the Rumley Oil Pull tractor.... Obed shall have the right to move at his expense his residential structure together with his personal property at any time after the date of this agreement, subject to completion of the removal of all property within thirty (30) days after the date of the order of the Probate court granting distribution of the real estate. Obed acknowledges that time is of the essence of [sic] this agreement.

> \* \* \* \* \* \*

> Obed agrees to file no objection or pleading of any nature or kind in the Estates, it being understood that the execution of this agreement represents a total and complete settlement of all claims of any nature or kind which Obed may have against the Estate, Sharon and Eugene individually and as Personal Representatives.

Appellants' App. p. 82, 83. Eugene testified that the thirty-day limit for Obed Jr.

---

1. The three other appeals are *Kalwitz v. Estates of Kalwitz*, 759 N.E.2d 228 (Ind.Ct.App. 2001), *reh'g denied, trans. denied; Estates of*

*Kalwitz v. Kalwitz*, 717 N.E.2d 904 (Ind.Ct. App.1999); and *In re Estate of Kalwitz*, 923 N.E.2d 982 (Ind.Ct.App.2010), *trans. denied.*

and Rolene to remove their personal property began in January 2007. Tr. p. 57.

On November 1, 2007, Obed Jr. filed a motion requesting more time to remove his personal property from the estates. Later that month, Obed Jr. filed an affidavit in which he stated that he had removed all the property that he wants and "'forfeits the right to remove any remaining items not removed and still located at premises prior to ... November 17th.'" *Id.* at 10 (Rolene reading affidavit).

On January 4, 2008, Judge King discharged Eugene and Sharon as personal representatives and closed the estates.

Over a year later, on February 27, 2009, Obed Jr. and Rolene filed a small claims action alleging that from March 29, 2007, through April 1, 2007, Eugene and Sharon "stole certain miscellaneous items, farm equipment, and 'rare antique agricultural treasures'" from the 331 acres now belonging to Eugene and Sharon. Appellants' App. p. 2, 109; Tr. p. 3–4.[2] The small claims action was based on theories of replevin and conversion. Tr. p. 5. Obed Jr. and Rolene sought return of the allegedly stolen items and the maximum allowable damages of $6000. Appellants' App. p. 110. After receiving an extension of time in which to plead, Eugene and Sharon filed an answer and counterclaim in April 2009. The counterclaim sought compensatory damages for abuse of process, punitive damages, and attorney's fees of up to $6000.

Although a different judge was to hear the case, for reasons unclear from the record, Judge King presided over the case as Senior Judge. On August 10, 2009, Obed Jr. and Rolene filed a request for a special judge, which stated only, "Plaintiffs request a special judge. Also a date after Sept 4th and, if possible, in the afternoon." Appellees' App. p. 21. Judge King denied the request a few days later without a hearing, stating, "The request must be denied for the reason that pursuant to the Indiana Rules Of Trial procedure the right to an automatic change of venue has long ago expired."[3] *Id.* at 22. A few days after that, Obed Jr. and Rolene filed a letter requesting reconsideration, which Judge King denied the same day.

A bench trial was held in October 2009. Obed Jr. and Rolene proceeded *pro se,* while Eugene and Sharon were represented by counsel. Obed Jr. and Rolene each testified that Eugene and Sharon stole the personal property distributed to Obed Jr. in the Mediation Settlement Agreement. Tr. p. 3–4, 17–18. Stephen Kray, Eugene and Sharon's attorney during the mediation and small claims proceedings as well as this appeal, asserted that Obed Jr. "dragged a lot of property out on the farm acreage, blocking the estate's tenant farmer from beginning his farming operation for the season." *Id.* at 14. Eugene testified, "I was removing and correcting booby-traps that you [Obed Jr.] put out there, glass, holes in the ground, wire, Constantina wire, barb wire, all this property—you had all this strung out, wires strung out.

---

2. Indiana Appellate Rule 50(A)(2)(f) requires an appendix to include "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal." As neither of the parties' appendices includes a copy of the small claims complaint, we take the allegations of Obed Jr. and Rolene from the small claims court's order and Rolene's testimony.

3. Although Judge King signed the final small claims judgment as Senior Judge, Appellants' App. p. 116, he signed this denial of Obed Jr. and Rolene's request for a change of judge as Permanent Judge Pro Tempore, Appellees' App. p. 23. Our review of the chronological case summary does not resolve the discrepancy.

You had no right to do that." *Id.* at 56. Norman Grieger, Sharon's husband, testified that after the thirty-day time period provided by the Mediation Settlement Agreement expired, *id.* at 46, "all the stuff that was pulled out there that was intact, like a gasoline truck, tanker truck, t[h]rash machine and stuff of that nature, was pushed back onto the grassy area, and the scrap metal that seemed to—just scrap, unrecognizable as anything else, and it was loaded up and taken to the scrap yard," *id.* at 32.

The small claims court's judgment included the following:

5. The estate proceedings of Obed Kalwitz, Sr. ... and Helen Kalwitz ... spanned a period of twelve [12] years of contentious litigation, the history of which is generally documented in three appellate decisions: 1) *Estates of Kalwitz v. Kalwitz,* 717 N.E.2d 904 (Ind.Ct. App.1999); 2) *Kalwitz v. Estates of Kalwitz,* 759 N.E.2d 228 (Ind.Ct.App.2001); and 3) *Kalwitz v. Estates of Kalwitz,* 822 N.E.2d 274 (Ind.Ct.App.2005). The parties to that enduring litigation are those same parties engaged in this litigation; that is, Obed Kalwitz, Jr., Eugene Kalwitz, and Sharon Grieger are siblings and comprised the living heirs of Obed Kalwitz, Sr. and Helen Kalwitz, their father and mother. Rolene Kalwitz is Obed Kalwitz, Jr's wife of many years.

\*　·　\*　\*　\*　\*　\*

8. [The Mediation Settlement Agreement] was made the order of the probate court on October 10, 2007, at which time the court directed that all portable farm machinery be removed by November 17, 2007. *See* Defendant's Exhibit A, Obed Kalwitz [Jr.]'s "Motion for Extension Of Time for Access to Obtain Personal Property[,"] paragraph 1, filed Nov. 1, 2007 in the Estate proceedings.

9. On November 19, 2007, Obed Kalwitz Jr. caused an affidavit of himself Entitled "Affidavit of Obed A. Kalwitz, Jr." to be filed in the Estate Proceedings. Defendant's Exhibit B.

10. In Paragraph 5 of that affidavit given "under oath", Obed Kalwitz, Jr. stated as follows: "That Obed A. Kalwitz, Jr. has removed the residence and portable farm equipment from the premises as ordered by the Court's order of October 10, 2007."

11. Immediately thereafter in paragraph 6 of that affidavit, the following and seemingly conclusive declaration of Obed Kalwitz, Jr. is made: **"That Obed Kalwitz, Jr. forfeits the right to remove any remaining items not removed and still located at premises prior to November 17, 2007 at 4:00 p.m."**

12. On the 4th day of January, 2008, the probate court issued an order closing the Estates ..., discharging the co-personal representatives—Sharon Grieger and Eugene Kalwitz—from any further responsibilities to the estates, and terminating their liability relative to their fiduciary obligations as co-personal representatives.

\*　\*　\*　\*　\*　\*

14. Plaintiffs attempt to circumvent those principles of law by arguing that they are not suing Eugene Kalwitz and Sharon Grieger in their capacity as personal representative but, rather, as individuals who allegedly stole the equipment. That argument fails on its face. The property at issue was property that was the subject of a pending estate proceeding. Sharon Grieger and Eugene Kalwitz were both heirs and co-personal representatives and owed fiduciary obligation to the estates and all heirs. Although Obed Kalwitz [Jr.] vigorously contested the estate proceedings at vir-

tually every stage of their proceeding for a period of ten years, he ultimately entered into a mediated agreement that provided for his receipt of the subject property and filed affidavits acknowledging his removal of portable machinery "as ordered by the Court's order of October 10, 2007" and forfeiture of remaining items. However the terms of his statements in paragraphs 5 and 6 of the affidavit might be construed, it was incumbent upon Obed Kalwitz [Jr.] to raise any issues regarding the portable farm machinery granted to him via the mediated agreement while the estates remained open. Obed Kalwitz [Jr.] was represented by counsel during the estate proceedings and cannot claim to have been duped into foregoing his rights to property.

\* \* \* \* \* \*

18. Evidence established that since this proceeding was instituted, Sharon Grieger has suffered a recurrence of her cancer and that stress is a causal factor in cancer recurrence. Sharon Grieger wept openly in court, while Eugene Kalwitz became visibly agitated and angry during cross-examination by his brother Obed.

Appellants' App. p. 110, 111–13, 114. The small claims court ruled against Obed Jr. and Rolene on their claim. It ruled in favor of Eugene and Sharon on their counterclaim in the sum of $1750 in compensatory damages, $2750 in punitive damages, and $900 in attorney's fees, for a total judgment of $5400.

Obed Jr. and Rolene now appeal.

### Discussion and Decision

Obed Jr. and Rolene appeal the small claims court's judgment in favor of Eugene and Sharon. Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and stat-utes." Ind. Small Claims Rule 11(A). Here, the small claims court entered detailed special findings and conclusions sua sponte. Although Indiana Trial Rule 52(A), which governs the effect of findings by the trial court, does not apply in small claims proceedings, see Bowman v. Kitchel, 644 N.E.2d 878, 878 (Ind.1995) (no error where small claims court refused request to issue Trial Rule 52 findings and conclusions because "Trial Rule 52 does not apply in small claims proceedings"), the small claims court's findings here, while not binding, are nevertheless helpful to this Court in reviewing the judgment.

The clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1067 (Ind.2006). This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. Id. at 1067–68. In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Counceller v. Ecenbarger, Inc., 834 N.E.2d 1018, 1021 (Ind.Ct.App. 2005). The judgment in favor of Eugene and Sharon, the party having the burden of proof on the counterclaim, will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of their counterclaim were established by a preponderance of the evidence. See id.

On appeal, Obed Jr. and Rolene contend that the small claims court erred by: (1) denying their request for a change of

judge, (2) determining that their claim is barred by res judicata, and (3) awarding compensatory and punitive damages as well as attorney's fees to Eugene and Sharon.

## I. Change of Judge

■ Obed Jr. and Rolene first contend that the small claims court erred by denying their request for a change of judge.

■ Indiana Trial Rule 1 provides that the Trial Rules "govern the procedure and practice ... in all suits of a civil nature." Small Claims Rule 1(A) provides that the Small Claims Rules "apply to all small claims proceedings." The Trial Rules govern small claims proceedings to the extent the two sets of rules do not conflict, but where the two conflict, the Small Claims Rules apply. *Niksich v. Cotton*, 810 N.E.2d 1003, 1005 (Ind.2004).

■■ The Small Claims Rules make no provision for change of judge motions. A motion for change of judge in a small claims proceeding is therefore governed by Indiana Trial Rule 76, which provides in pertinent part:

(B) In civil actions, where a change may be taken from the judge, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground therefor by a party or his attorney.

\* \* \* \* \* \*

(C) In any action except criminal no change of judge ... shall be granted except within the time herein provided. Any such application for change of judge ... shall be filed not later than ten [10] days after the issues are first closed on the merits. Except:

(1) in those cases where no pleading or answer may be required to be filed by the defending party to close issues (or no responsive pleading is required

under a statute), each party shall have thirty [30] days from the date the case is placed and entered on the chronological case summary of the court as having been filed;

\* \* \* \* \* \*

(6) if the moving party first obtains knowledge of the grounds for change of ... judge after the time above limited, he may file said application, which must be verified personally by the party himself, specifically alleging when the cause was first discovered, how discovered, the facts showing the grounds for a change, and why such cause could not have been discovered before by the exercise of due diligence.... [T]he ruling of the court may be reviewed only for abuse of discretion.

Trial Rule 76 thus provides that the granting of a motion to change judge is automatic if made within the time limitations established by the rule. *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 924–25 (Ind.Ct.App.2003), *reh'g denied, trans. denied.* If the motion is not within the time limitations, we review the trial court's ruling on the motion for an abuse of discretion. *Id.* at 925. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

■ In small claims proceedings, "[a]ll defenses shall be deemed at issue without responsive pleadings." Ind. Small Claims Rule 4(A). Thus, Obed Jr. and Rolene were not required to file a responsive pleading to Eugene and Sharon's counterclaim to close the issues. Pursuant to Trial Rule 76(C)(1), then, if Obed Jr. and Rolene wanted an automatic change of judge, they were required to make their request within thirty days from the date the case was placed and entered on the chronological case summary of the court as

having been filed. The chronological case summary reflects that Obed Jr. and Rolene filed their claim on February 27, 2009, but they did not file their request for a special judge until August 10, 2009. Consequently, their request was untimely.

To obtain a change of judge after expiration of the period allotted for an automatic change of judge, a party must comply with the procedure set forth in Trial Rule 76(C)(6). Here, the pertinent part of Obed Jr. and Rolene's request for a special judge merely stated, "Plaintiffs request a special judge." Contrary to the requirements of Trial Rule 76(C)(6), the request was not personally verified, made no allegations of when and how the cause was first discovered, disclosed no facts showing the grounds for a change, and failed to state why such cause could not have been discovered earlier in the exercise of due diligence. We conclude that the small claims court did not abuse its discretion in denying Obed Jr. and Rolene's request for a change of judge.

## II. Res Judicata

Obed Jr. and Rolene next contend that the small claims court erred by determining that their claim is barred by res judicata. Res judicata serves to prevent repetitious litigation of disputes which are essentially the same. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind.Ct. App.2003). The doctrine of res judicata consists of two distinct components: claim preclusion and issue preclusion. *Id.* Claim preclusion is applicable when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties. *Id.* When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. *Id.* Claim preclusion applies when the following four factors are present: (1) the former judgment

was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merit s; (3) the matter now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies. *Id.*

Obed Jr. and Rolene argue that the record does not support a finding that a former judgment was rendered by a court of competent jurisdiction or that their conversion claim was or could have been determined in the estate proceedings. We address each argument in turn.

Obed Jr. and Rolene's first res judicata argument, that the record does not support a finding that a former judgment was rendered by a court of competent jurisdiction, asserts that Finding 12 is unsupported by the evidence. Finding 12 states that on January 4, 2008, the probate court closed the estates, discharged Eugene and Sharon as personal representatives, and terminated their liability as personal representatives. On cross-examination, Rolene testified as follows:

Q And you remember in the estate proceedings on January 4, 2008, where the Judge approved a report that basically said all the assets of the estate have been distributed, and Eugene and Sharon are discharged from any further liability. Do you remember that order?

A That was in December?

Q That was January 4, 2008.

A Now that one I never—I don't remember that one.

Q This document has been marked Defendant's Exhibit C. Would you take a look at that. See if that refreshes your recollection.

A (Complies.) I only saw this when you filed it into this small claims.

Q Oh. I gave you copies of all my exhibits?

A Right.

Q You were heavily involved in the estate litigation. Does this seem like the date that the estate was formally closed, and Eugene and Sharon were discharged of their responsibilities as personal representatives?

A According to this, it looks like that's what happened.

Q And the date of that Order is—what did we say it was?

A January 4, 2008.

Tr. p. 10–11. On appeal, Obed Jr. and Rolene note that the probate court's January 4, 2008, order, Defendant's Exhibit C, was never offered into evidence and further assert that Rolene "never acknowledged the authenticity of the exhibit, never testified as to any personal recollection, and never conceded that the probate cases had been closed." Appellants' Br. p. 14.

Indiana Small Claims Rule 8(A) provides that small claims trials "shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law, and shall not be bound by the statutory provisions or rules of practice, procedure, pleadings or evidence except provisions relating to privileged communications and offers of compromise." Likewise, Indiana Evidence Rule 101(c)(2) provides that the Evidence Rules, other than those with respect to privileges, do not apply to small claims proceedings. "[T]he whole point of having a separate small claims process is to provide a quick, less expensive alternative to a fullblown trial." *Matusky v. Sheffield Square Apartments*, 654 N.E.2d 740, 742 (Ind.1995). "It is precisely these goals which would be most compromised by the accretion of procedural and evidentiary regulations, regardless of their merit, which is why the non substantive rules

applicable in small claims proceedings are few indeed." *Id.*

Obed Jr. and Rolene's arguments are based on evidence rules inapplicable to small claims proceedings. The January 4, 2008, probate order was attached to Eugene and Sharon's answer and counterclaim. Obed Jr. and Rolene's claim that the record does not support a finding that a former judgment was rendered by a court of competent jurisdiction fails.

Obed Jr. and Rolene's second res judicata argument asserts that there is no indication in the record that their claim was or could have been determined in the estate proceedings. We disagree.

The Mediation Settlement Agreement provides, "Obed agrees to file no objection or pleading of any nature or kind in the Estates, it being understood that the execution of this agreement represents a total and complete settlement of all claims of any nature or kind which Obed may have against the Estate, Sharon and Eugene individually and as Personal Representatives." Appellants' App. p. 83. Although Obed Jr. and Rolene frame their claim as one of conversion against Eugene and Sharon individually, the personal property allegedly stolen was part of the estates and distributed to Obed Jr. as part of the Mediation Settlement Agreement. Because the personal property was allegedly stolen between March 29 and April 1, 2007, the estates did not close until January 4, 2008, and the Mediation Settlement Agreement barred any claims against Eugene and Sharon, Obed Jr. and Rolene's claim was determined in the estate proceedings. We will not allow Obed Jr. and Rolene to thwart the purpose of the release provision above by bringing a claim against Eugene and Sharon individually that was determined in the estate proceedings.

We conclude that the small claims court did not err by finding that res judicata bars Obed Jr. and Rolene's claim.[4]

### III. Judgment

Obed Jr. and Rolene finally contend that the small claims court erred by awarding compensatory and punitive damages as well as attorney's fees to Eugene and Sharon.

As an initial matter, Obed Jr. and Rolene challenge five of the small claims court's findings as being unsupported by the evidence. First, they challenge Finding 5, where the small claims court noted that the estate proceedings "spanned a period of twelve [12] years of contentious litigation" and resulted in three prior Court of Appeals opinions. *Id.* at 110. Obed Jr. and Rolene contend that there is no evidence supporting that the litigation was contentious or that it spanned twelve years. To the contrary, Eugene and Sharon attached this Court's 2005 opinion in *Kalwitz v. Estate of Kalwitz* to its answer and counterclaim. That case documented contentious litigation that spanned ten years. With the addition of the mediation proceedings and the instant small claims action, Finding 5 is supported by the evidence.

Obed Jr. and Rolene also challenge Findings 8, 9, and 10. These findings refer to Obed Jr.'s motion for more time to remove his property and Obed Jr.'s affida-

vit stating that he has removed all of his property. Obed Jr. and Rolene argue that these filings were never offered into evidence. Nevertheless, Rolene testified about the content of these filings on cross-examination. Tr. p. 8–10. Findings 8, 9, and 10 were thus supported by the record.

Obed Jr. and Rolene also challenge Finding 14 by arguing that the record does not disclose that the probate court ever approved the Mediation Settlement Agreement and therefore, the small claims court's finding that Obed Jr. removed property "as ordered by the Court's order of October 10, 2007" is without evidentiary support. Regardless of whether the record discloses that the probate court approved the Mediation Settlement Agreement, the record does show that it was a binding agreement. Obed Jr. and Rolene themselves offered the Mediation Settlement Agreement into evidence. *Id.* at 6. It was signed by all the parties and their attorneys, Appellants' App. p. 84, and shows a file stamp indicating it was filed with the probate court on October 5, 2006, *id.* at 81. Obed Jr. and Rolene's argument thus fails.

#### A. Compensatory Damages

 Obed Jr. and Rolene contend that the small claims court erred by awarding Eugene and Sharon compensatory damages. Compensatory damages are "[d]amages sufficient in amount to indemnify the injured person for the loss suffered."

---

**4.** Obed Jr. and Rolene also claim that there is no statutory bar to bringing a tort action against a personal representative, individually and not in his or her capacity as personal representative, who has stepped out of the line of duty. Appellants' Br. p. 15–16. Indeed, this Court has stated that as a general rule, when a personal representative of an estate commits a tort, he or she steps outside the line of duty, and the estate is not liable for such tort. *Matter of Raymond Heeter Trust*, 681 N.E.2d 240, 243 (Ind.Ct.App.1997), *reh'g denied, trans. denied.* Instead, a personal rep-

resentative is liable in his or her individual capacity for any torts committed in administration of an estate. *See id.*

Even so, the evidence most favorable to the small claims court's ruling supports the finding that Obed Jr. and Rolene's claim "also fail[s] for the reason that [they] failed to [s]atisfy their burden to prove that items of property belonging to them were taken by Defendants or, for that matter, the value of any items allegedly taken." Appellants' App. p. 113.

Black's Law Dictionary 416 (8th ed. 2004). Here, the small claims court awarded compensatory damages because Obed Jr. and Rolene's claim amounted to "an abuse of process with the ulterior purpose of harassing the counterclaimants and intentionally inflicting mental distress upon them by resurrecting the decade of turmoil between the siblings that accompanied the family estate proceedings." Appellants' App. p. 113.

 An action for abuse of process requires a finding of misuse or misapplication of process for an end other than that which it was designed to accomplish. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind.Ct.App.2005), *trans. denied.* To prevail on a claim of abuse of process, a party must prove the following elements: (1) an ulterior purpose or motive and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Id.* The second element, stated differently, involves an inquiry as to whether the use of process was a legitimate use of the judicial system. *Reichhart v. City of New Haven*, 674 N.E.2d 27, 32 (Ind.Ct.App.1996) (citing *Broadhurst v. Moenning*, 633 N.E.2d 326, 333 (Ind.Ct.App.1994)), *trans denied.*

Here, Obed Jr. and Rolene contend that the small claims court erred by awarding damages for intentional infliction of emotional distress suffered as a result of an abuse of process. They then proceed to analyze why the elements of the tort of intentional infliction of emotional distress are not present here. *See* Appellants' Br. p. 11–12. However, although Eugene and Sharon's counterclaim for abuse of process

alleged that the purpose of Obed Jr. and Rolene's small claims action was to inflict emotional distress, Eugene and Sharon made no counterclaim for the separate tort of intentional infliction of emotional distress. Appellees' App. p. 2–3. Likewise, the small claims court's compensatory damage award was for abuse of process, not intentional infliction of emotional distress. Obed Jr. and Rolene's intentional infliction of emotional distress analysis is thus misplaced, and because they make no separate claim that their conduct did not amount to an abuse of process, they fail to show that the compensatory damage award was in error.

Further, the combined $1750 award to Sharon and Eugene in compensatory damages was appropriate. We have awarded damages for stress in other cases. *See, e.g., Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 721 (Ind.Ct.App.2007) (jury award for damages in bad faith termination of benefits case not error where evidence showed participant suffered stress), *trans. denied.* The testimony of Eugene and Sharon show that Obed Jr. and Rolene's small claims action caused them inconvenience, emotional distress, and anxiety. *See, e.g.,* Tr. p. 57, 62. We conclude that the evidence presented supports the compensatory damages for abuse of process.[5]

### B. Punitive Damages

 Obed Jr. and Rolene contend that the small claims court erred by awarding Eugene and Sharon punitive damages. Punitive damages are designed to punish the wrongdoer and to discourage him or her and others from similar conduct

---

5. We observe that the small claims court noted that since Obed Jr. and Rolene filed the small claims action, Sharon "has suffered a recurrence of her cancer and that stress is a causal factor in cancer recurrence." Appellants' App. p. 114. We are not basing our opinion on the fact that Sharon suffered a recurrence of cancer after this lawsuit was filed as there was no expert testimony presented to show any causal connection between the stress of this lawsuit and Sharon's cancer.

in the future. *INS Investigations Bureau, Inc. v. Lee,* 784 N.E.2d 566, 582 (Ind.Ct. App.2003), *trans. denied.* They are awarded in addition to damages that compensate for the specific injury. *Id.* The standard for determining if punitive damages were properly awarded is whether, considering only the probative evidence and the reasonable inferences supporting the judgment, a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *Id.*

Eugene and Sharon suffered ten years of litigation to impose a constructive trust on 331 acres that Obed Jr. and Rolene received from Obed Sr. and Helen through constructive fraud. The parties then entered into the Mediation Settlement Agreement, which was to be "a total and complete settlement of all claims of any nature or kind which Obed may have against the Estate, Sharon and Eugene individually and as Personal Representatives." In that agreement, Obed Jr. and Rolene agreed to remove their personal property from the estates within thirty days after the date of the probate court's order granting distribution. Eugene testified that the thirty-day period began in January 2007. Not only did Obed Jr. still have personal property on the estates after the thirty-day period, but he had also placed booby-traps, glass, and wire on the property. Obed Jr. did not mention that any of his personal property was stolen in his motion for more time to remove his property, Tr. p. 8–9, and he subsequently filed an affidavit stating that he forfeited the right to remove any remaining items from the estates. It was not until more than a year after the estates closed that Obed Jr. and Rolene filed the small claims

action alleging that Eugene and Sharon stole their property in March and April of 2007.

We conclude that a reasonable inference may be drawn that Obed Jr. and Rolene acted with malice and oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. The small claims court stated that it was imposing punitive damages to "punish the plaintiffs and deter [them] from further litigation designed to serve the plaintiffs' malicious desire and apparent need to pursue a vendetta against Obed Kalwitz [Jr.'s] siblings, thereby serving the public interest by discouraging frivolous use of the court system ad infinitum." Appellants' App. p. 114. We cannot say that the small claims court erred by awarding punitive damages.

### C. Attorney's Fees

Obed Jr. and Rolene contend that the small claims court erred by awarding Eugene and Sharon attorney's fees. Indiana Code section 34–52–1–1 provides in pertinent part:

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Here, the small claims court's order stated that "attorney fees should be assessed against Obed Kalwitz, Jr. and Rolene Kalwitz for the reason that their Notice of Claim was Frivolous, unreasonable and groundless, and litigated in bad faith."

Appellants' App. p. 114. Obed Jr. and Rolene's only arguments contesting the award of attorney's fees are that the small claims court's findings are not supported by the record and their claim is not barred by res judicata. These are arguments that we have already determined in favor of Eugene and Sharon. There is no error.

As a final matter, Eugene and Sharon request appellate attorney's fees and costs pursuant to Indiana Appellate Rule 66(E), which provides in pertinent part, "The Court may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." The Court of Appeals uses extreme restraint in awarding appellate damages because of the potential chilling effect upon the exercise of the right to appeal. *In re Estate of Carnes*, 866 N.E.2d 260, 267 (Ind.Ct.App.2007). Nonetheless, this case is an example of when a chilling effect is necessary to put an end to the matter. We conclude that Obed Jr. and Rolene's appeal, and indeed the entire lawsuit, was brought in bad faith and for purposes of harassment. We therefore remand to the small claims court for a determination of the amount of appellate attorney's fees and costs to which Eugene and Sharon are entitled.

Affirmed and remanded.

NAJAM, J., and BROWN, J., concur.